<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., a Delaware corporation, | Case No. 22cv2106 (EP) (ESK) |
| Plaintiff, | **OPINION** |
| v. | |
| EVERGREEN LODGING LLC, a Colorado limited liability company; SEAN KEATING, an individual; and SUSI KEATING, an individual, | |
| Defendants. | |

**PADIN, District Judge.**

This matter comes before the Court on Plaintiff Days Inns Worldwide, Inc.'s ("Plaintiff or "DIW") unopposed motion for default judgment against Defendants Evergreen Lodging LLC ("Evergreen"), Sean Keating, and Susi Keating (collectively, "Defendants") pursuant to Fed. R. Civ. P. 55(b). *See* D.E. 10.  The Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R.78(b).  For the reasons set forth below, Plaintiff's motion will be **GRANTED**.

## I.    BACKGROUND[1]

Plaintiff is a Delaware corporation with its principal place of business in Parsippany, New Jersey.  D.E. 1 ("Compl.") ¶ 1.  Evergreen is a Colorado limited liability company with its principal place of business in Westminster, Colorado.  *Id.* ¶ 2.  Sean and Susi Keating are both constituent members of Evergreen (the only members) and Colorado citizens.  *Id.* ¶¶ 3-5.

---

[1] The facts in this section are taken from the well-pled allegations in the Complaint, which the Court presumes to be true for purposes of resolving the instant motion for default judgment.

On or about December 4, 2020, DIW executed a franchise agreement with Evergreen to operate a 155-room Days Inn guest lodging facility in Golden, Colorado ("Facility"), for a fifteen-year term ("Franchise Agreement").  *Id.* ¶ 10 & Ex. A.  On or about the same day, DIW and Evergreen also entered into a SynXis Subscription Agreement ("SynXis Agreement"), which governed Evergreen's "access to and use of certain computer programs, applications, features, and services, as well as any and all modifications, corrections, updates, and enhancements to same." *Id.* ¶ 11 & Ex. B.

Pursuant to the Franchise Agreement and the SynXis Agreement, Evergreen "was required to make certain periodic payments to DIW for royalties, system assessments, SynXis fees, taxes, interest, and other fees" (collectively "Recurring Fees").  *Id.* ¶ 13.  Section 7.3 of the Franchise Agreement set the interest on "any past due amount payable to [DIW] under this [Franchise Agreement] at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."  *Id.* ¶ 14.  Section 3.6.4 required Evergreen to record all transactions it conducted and gross revenue it earned, monthly, "for purposes of establishing the amount of royalties and other Recurring Fees due to DIW."  *Id.* ¶ 15.  And Section 3.6 required Evergreen: to maintain "accurate financial information, including books, records, and accounts, relating to the gross revenue of the Facility[;]" and to "allow DIW to examine and audit the entries in these books, records, and accounts."  *Id.* ¶ 16.

Pursuant to Section 12.1 of the Franchise Agreement, Evergreen agreed that it would pay liquidated damages to DIW—based on a formula specified in the Franchise Agreement— if DIW terminated the Franchise Agreement pursuant to Section 11.2.  *Id.* ¶ 18.  Pursuant to Section 11.2, DIW could terminate the same, with notice to Evergreen, if Evergreen: discontinued operating the Facility as a Days Inn guest lodging facility; and/or lost possession or the right to possession of

the Facility.  *Id.* ¶ 17.  Finally, the Franchise Agreement provided that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."  *Id.* ¶ 19.

Furthermore, Sean and Susi Keating provided DIW with a Guaranty of Evergreen's obligations under the Franchise Agreement ("Guaranty").  *Id.* ¶ 20 & Ex. C.  Pursuant to the Guaranty, Sean and Susi Keating agreed that, upon Evergreen's default under the Franchise Agreement, they would "immediately make each payment and perform or cause [Evergreen] to perform, each unpaid or unperformed obligation of [Evergreen] under the [Franchise] Agreement."  *Id.* ¶ 21.  They also agreed to "pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights and remedies under the Guaranty or the Franchise Agreement."  *Id.* ¶ 22.

By letter dated June 26, 2021, Evergreen's counsel notified DIW that it intended to cease operating the Facility as a Days Inn guest lodging facility, effective immediately, thus terminating the Franchise Agreement.  *Id.* ¶ 23.  On June 29, 2021, DIW acknowledged Evergreen's unilateral termination of the Franchise Agreement, effective June 26, 2021, and advised Evergreen that it was required to pay DIW $310,000 in liquidated damages for premature termination, as well as "all outstanding Recurring Fees through the date of termination."  *Id.* ¶ 34.

On April 12, 2022, DIW filed a six-count Complaint in this Court.  Count One seeks an accounting of revenues.  *Id.* ¶¶ 26-29.  Count Two seeks liquidated damages pursuant to Section 12.1 of the Franchise Agreement in the amount of $310,000.  *Id.* ¶¶ 30-36.  Count Three seeks actual damages.  *Id.* ¶¶ 37-40.  Count Four seeks $40,353.79 in Recurring Fees pursuant to the Franchise Agreement and the SynXis Agreement, under a breach of contract theory.  *Id.* ¶¶ 41-44.

Count Five seeks $40,353.79 in Recurring Fees pursuant to the Franchise Agreement, under an unjust enrichment theory. *Id.* ¶¶ 45-48.  Count Six seeks payment from Sean and Susi Keating as guarantors for Evergreen's obligations. *Id.* ¶¶ 49-52.

Defendants have failed to answer or otherwise respond to the Complaint.  On May 12, 2022, the Clerk of the Court entered default.  DIW now moves for default judgment and seeks $410,308.00 in damages.  D.E. 10-2 ("Mallet Aff.") ¶ 28.

## II.   LEGAL STANDARD

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).  However, because the entry of default judgment prevents the resolution of claims on the merits, courts do "not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984).

A district court may enter default judgment against a properly served party who has failed to plead or otherwise respond to the action filed against him.  *See* Fed. R. Civ. P. 55(b)(2).  But before entering default judgment, that court must also determine that the "unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *DirecTV, Inc. v. Asher*, 2006 U.S. Dist. LEXIS 14027, at *3 (D.N.J. Mar. 14, 2006) (Rodriguez, J.) (citations omitted)).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 U.S. Dist. LEXIS 99535, at *4 (D.N.J. July 17, 2013).  In other words, while courts must accept the well-pled factual allegations of a complaint as true, they do not need to accept the factual allegations concerning damages as true. *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F.

4

Supp. 2d 532, 536 (D.N.J. 2008)).  Finally, "if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations." *Days Inn Worldwide, Inc. v. Jai Shree Jalaram, Inc.*, 2022 U.S. Dist. LEXIS 18710, at *7 (D.N.J. Feb. 1, 2022) (citation omitted).

## III. DISCUSSION

### A. Threshold Requirements

The Court may not enter default judgment against Defendants, unless two threshold requirements are met.  First, the Court must both have jurisdiction and Defendants must have been properly served.  Second, the Court must determine whether Plaintiff has a legitimate cause of action against Defendants.  The Court concludes that both threshold requirements are met.

First, the Court is satisfied that it has subject matter jurisdiction over the present matter pursuant to 28 U.S.C. 1332 because the parties are citizens of different states—Delaware/New Jersey and Colorado—and the amount in controversy exceeds $75,000.  *See* Compl. ¶¶ 1-6; *see also* Mallet Aff. ¶ 28.  The Court is also satisfied that it has personal jurisdiction over Defendants because they consented to this Court's jurisdiction; specifically, Evergreen consented to "the non-exclusive personal jurisdiction of and venue in […] the United States District Court of the District of New Jersey" in Section 17.6.3 of the Franchise Agreement, *see* Ex. A; and Sean and Susi Keating consented to the this Court's jurisdiction by virtue of the terms of the Guaranty, in which they agreed to be personally bound by the terms of the Franchise Agreement, *see* Ex. C.

With respect to service of process, the Court is satisfied that Defendants were properly served pursuant to Fed. R. Civ. P. 4(e)(2)—as to Sean and Susi Keating—and Fed. R. Civ. P. 4(h)(1)(B)—as to Evergreen.  Here, the docket contains proof of service of the Summons and Complaint on Defendants on April 20, 2022.  *See* D.E. 5.  Defendants have failed to answer or

otherwise respond to the Complaint within the deadline and the Clerk of the Court's entry of default was duly noted on the docket on May 12, 2022.  Thus, Defendants were properly served.

Second, the Court concludes that Plaintiff has asserted a legitimate breach of contract claim against Defendants.  To state a breach of contract claim under New Jersey law requires establishing: "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages."  *See Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013).  Here, Plaintiff has sufficiently pled a breach of contract claim by alleging: (1) Plaintiff entered into a valid Franchise Agreement (and Guaranty) with Defendants; (2) Defendants breached those agreements by failing to pay liquidated damages after prematurely terminating those same agreements and failing to pay outstanding Recurring Fees through the termination date; and (3) Plaintiff suffered damages as a result of Defendants' breach.  Thus, Plaintiff has a viable breach of contract claim against Defendants.

Accordingly, the Court concludes that the threshold requirements for a default judgment to be entered against Defendants are satisfied.

## B.  Requisite Three-Factor Analysis

Next, the Court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense[;] (2) the prejudice suffered by the party seeking default[;] and (3) the culpability of the party subject to default."  *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).  The Court concludes that these factors weigh in favor of granting Plaintiff's motion for default judgment.

Analysis of the first factor is made difficult by Defendants' failure to answer the Complaint or otherwise respond in this matter. *See Teamsters Health & Welfare Fund of Philadelphia & Vicinity v. Dubin Paper Co.*, 2012 U.S. Dist. LEXIS 102652, at *10 (D.N.J. July 24, 2012) (court concluded that it could not "determine whether [d]efendant had any meritorious defenses" where defendant did not respond and the current record did not point to any possible defenses). Here, despite Defendants' failure, the Court's independent review of the current record does not reveal a meritorious defense to Plaintiff's breach of contract claim. *See Days Inn Worldwide, Inc. v. Jai Shree Jalaram, Inc.*, 2022 U.S. Dist. LEXIS 18710, at *8 (D.N.J. Feb. 1, 2022). Accordingly, the Court finds that the first factor weighs in favor of default.

Analysis of the second and third factors—prejudice to Plaintiff and Defendants' culpability—also weigh in favor of default. Defendants were properly served, but failed to appear, defend, or otherwise respond to the Complaint. *See* D.E. 5. As a result, Plaintiff has already been prejudiced by Defendants' inaction because Plaintiff has been "prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 U.S. Dist. LEXIS 115142, at *9-10 (concluding that plaintiff was prejudiced by defendants' failure to answer, despite having been properly served six months prior to plaintiff's motion for default judgment). And if the Court does not enter default judgment against Defendants, Plaintiff will be further prejudiced because it "has no other means of seeking damages for the harm caused by Defendant." *See Gowan v. Cont'l Airlines, Inc.*, 2012 U.S. Dist. LEXIS 95135, at *7 (D.N.J. Jul. 9, 2012).

Additionally, "[a]bsent any evidence to the contrary," Defendants' failure to answer "evinces [their] culpability in [the] default." *Great Am. Ins. Co. v. Fast Time Constr., LLC*, 2021 U.S. Dist. LEXIS 181351, at *6 (D.N.J. Sept. 21, 2021) (internal citations and quotations omitted).

Here, there is no record evidence excusing Defendants' failure to answer that would counsel against a finding of culpability.  Accordingly, the Court finds that the second and third factors weigh in favor of default.

### C.  Damages

Having determined that entry of default judgment against Defendants is appropriate, the Court must assess whether Plaintiff is entitled to the amount of damages it seeks.  Plaintiff seeks $410,308.00 consisting of $368,858.80 in liquidated damages, inclusive of principal and prejudgment interest, and $41,449.20 in Recurring Fees, inclusive of principal and prejudgment interest, both of which are grounded in the express terms of the Franchise Agreement.  *See* Compl., Ex. A.

After reviewing the itemized statement attached to the Mallet Affidavit, which sets forth the basis for Recurring Fees, inclusive of interest at the rate of 1.5% per month pursuant to Section 7.3 of the Franchise Agreement, the Court is satisfied that DIW is entitled to the requested amount of $41,449.20 for Recurring Fees, inclusive of prejudgment interest.  *See* Mallet Aff., Ex. E.

Turning to Plaintiff's request for $368,858.80 in liquidated damages, inclusive of prejudgment interest, the Court is also satisfied that Plaintiff is entitled to this amount, which was calculated using the appropriate formula specified in Section 12.1 of the Franchise Agreement. Specifically, this section "set liquidated damages for the Facility at $2,000.00 multiplied by the number of guest rooms Evergreen was authorized to operate at the Facility at the time of termination."  *See* Ex. A; *See also* Mallet Aff. ¶ 25.  At the time of termination, Evergreen was authorized to operate 155 guest rooms at the Facility; therefore, Plaintiff is entitled to $310,000 in liquidated damages, before prejudgment interest.  *See* Mallet Aff. ¶ 25.  Because the Franchise Agreement provides for interest on this amount, DIW seeks an additional $58,858.80; DIW

reached this amount through a series of reasonable calculations.  *See* Mallet Aff. ¶ 27.  The Court concludes that Plaintiff is entitled to $368,858.80 in liquidated damages, inclusive of prejudgment interest.

Accordingly, default judgment will be entered against Defendants in the amount of $410,308.00.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment against Defendants is **GRANTED**.  An appropriate Order accompanies this Opinion.

Dated: January 13, 2023

_____
Evelyn Padin, U.S.D.J.